MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
238 A.F.C. Flores Street
Suite 801, Pacific News Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090
Facsimile: (671) 477-5206



Attorneys for Defendant/Counterclaim-Plaintiff
  NetCor, Inc. Holding Company,

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, <br><br> Plaintiff, <br><br> v. <br><br> NETCOR, INC. HOLDING COMPANY, <br><br> Defendant. | CIVIL CASE NO. 04-00041 <br><br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NETCOR, INC. HOLDING COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS; AND COUNTER-MOTION TO AMEND COUNTERCLAIMS** |
| NETCOR, INC. HOLDING COMPANY, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, <br><br> Counterclaim-Defendant. | |

//

**ORIGINAL**

## INTRODUCTION

"For every wrong there is a remedy." This fundamental precept of jurisprudence is codified in Guam law as 20 GCA Section 15115. This maxim also supports the rationale behind disfavoring Motions to Dismiss Under Rule 12(b)(6). The issue before this Court is, "Does the counter-claim of Defendant/Counterclaim Plaintiff **NETCOR, INC. HOLDING COMPANY** ("NetCor") state *any* colorable claim upon which relief may be granted to it? A review of the counterclaims in a light most favorable to NetCor, the answer is "yes."

Even if the Court were to find in favor of Occidental's motion to dismiss, rather than an outright dismissal, NetCor respectfully moves and requests that the Court grant NetCor an opportunity to amend its counterclaim.

## LEGAL DISCUSSION

### I.

### MOTIONS TO DISMISS ARE A HIGHLY DISFAVORED REMEDY

Occidental has moved to dismiss NetCor's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). Motions to dismiss pursuant to Rule 12(b) are highly disfavored and, consequently, are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits."[1]

---

[1] 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1349, pp. 192-193 (1990). Conley v. Gibson, 78 S.Ct. 99, 355 U.S. 41, 2 L.Ed.2d 80 (1957)("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

1

Numerous courts, including the Ninth Circuit Court of Appeals, are similarly reluctant to dismiss a complaint for failure to plead fraud as required under Rule 9(b).[2] In ruling on the instant motion to dismiss, this Court should apply the standards discussed below.

A.   **The Legal Standard for Motions Based on FRCP 12(b)(6).**

It is widely held that "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."[3] Moreover, the burden is on the moving party to prove that ***no claim*** exists.[4] Construing the complaint in a light most favorable to the plaintiff, the court's inquiry is focused upon whether the allegations set forth in the four corners of the Complaint (or here, a counterclaim), taken as true, constitute a statement of a claim under Rule 8(a).[5] Fed. R. Civ. P. 8(a) provides for notice pleading – "a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[6] The Supreme Court in Swierkiewicz v. Sorema N.A.,[7] describing the

---

[2] Because Guam's Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure from which they were adopted, federal judicial decisions construing Guam's Rules are highly persuasive. Guam v. Ojeda, 758 F.2d 403, 406 (9th Cir. 1985).

[3] 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1357 at p. 321 (1990). See also, Gallardo v. DiCarlo, 203 F.Supp.2d 1160, 1164-1165 (C.D. Cal. 2002)(A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, and may be granted only in extraordinary circumstances).

[4] Id., 2003 Supplement at p. 360. Gallardo v. DiCarlo, 203 F.Supp.2d 1160, 1165 (C.D. Cal. 2002)(It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met).

[5] 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1357 at p. 304-310 (1990).

[6] Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001)(quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)).

[7] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002).

2

requirements of Rule 8(a) as a "simplified notice pleading standard," has stated, "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"[8]

The Ninth Circuit has held that, "a dismissal for failure to state a claim is proper only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[9] Applying the standard articulated by the Supreme Court in Swierkiewicz, the appellate court has further held it is error to dismiss claims at so early a state of litigation unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[10] Moreover, claimants "must be allowed to make their case through presentation of evidence, . . . they must not be put to the test to prove this allegation at the pleading stage."[11] The court must "accept the allegations contained in the complaint as true for the purpose of [the] case."

Furthermore, "the complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on ***any***

---

[8] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002)(quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)).

[9] Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994), *citing* Conely v. Gibson, 78 S.Ct. 99, 355 U.S. 41, 2 L.Ed.2d 80 (1957).

[10] Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1167 (9th Cir. 2002)(quoting Swierkiewicz v. Sorema N.A., *supra*).

[11] Id. at 1171.

3

*possible theory.*"[12] In order to assist the court in such an examination, the court may use NetCor's brief in opposition to the motion to dismiss to clarify allegations in the complaint whose meaning is unclear. Thus, the inquiry before this Court is whether, in the light most favorable to NetCor and considering all the information available to it (including that contained in the instant brief), and with every doubt resolved in NetCor's behalf, the counterclaim states any valid claim for relief. Indeed, a dismissal without leave to amend is inappropriate unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts."[13]

### B. The Legal Standard for Motions Based upon FRCP 9.

In considering whether a complaint or counterclaim adequately avers fraud with the particularity required under Rule 9(b), the rule must be read in conjunction with Rule 8:

> It should be kept in mind that Rule 8(a) requests "a short and plain statement of the claim" for relief; Rule 8(b) requires the same in the case of defenses; Rule 8(e) calls for "simple, concise, and direct" averments in a pleading and goes on to state that "no technical forms of pleading * * * are required" and that a pleading may be internally inconsistent; [footnote omitted] and Rule 8(f) provides that "all pleadings shall be so construed as to do substantial justice." Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach

---

[12] 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1357 at pp. 336-337. See, Church of Scientology of California v. Foley, 640 F.2d 1335, 1338 at n. 18 (Cal. Ct. App. 1980)(citing Wright & Miller), *cert. denied*, 101 S.Ct. 3110, 450 U.S. 961, 69 L.Ed.2d 972 (1980).

[13] Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)(en banc)(citation omitted).

4

and fails to take account of the general simplicity and flexibility
contemplated by the rules. (Footnotes omitted).[14]

A review of federal judicial decisions reveals that, although courts have struggled with the requirements of Rule 9(b) in light of the liberal environment created by Rule 8(a), courts are reluctant to dismiss claims for lacking particularity.[15] It is axiomatic, therefore, that in a motion under Rule 9(b), a court must strike a "balance between the simplicity sought in Rule 8 and the particularity required by Rule 9."[16]

While other circuits have expressly delineated a three-fold purpose for Rule 9(b),[17] the rule in the Ninth Circuit is that the nature of the individual case necessarily determines how much particularity is appropriate;[18] but, a "nit-picking approach is frowned on" in making a determination of how much particularity is appropriate.[19]

Even where the requirements of Rule 9(b) are not met, the Court should give the party leave to amend the Complaint (or, as here, the Counterclaim) rather than dismiss it

---

[14] 5 Wright and Miller, Federal Practice and Procedure: Civil 2d § 1298 at pp. 619-621.

[15] Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973)(Rule 9(b) does not "require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer to the allegations."); Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997)(Appellate court declined to require that a complaint must allege specific shipments to specific customers at specific times with a specific dollar amount of improperly recognized revenue).

[16] Id.

[17] See, American Town Center v. Hall 83 Assoc., 912 F.2d 104, 109 (6th Cir. 1990), Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994).

[18] Cincinnati Microwave, Inc. v. Wilson, 705 F. Supp. 1453, 1457 (D. Nev. 1989).

[19] Gottreich v. San Francisco Inv. Co., 552 F.2d 866, 867 (9th Cir. 1977), *as cited in* Cincinnati Microwave, Inc. v. Wilson, 705 F. Supp. 1453, 1457 (D. Nev. 1989).

5

without leave to amend – especially in the absence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies in the pleadings.[20] The complaint should only be dismissed without leave to amend if it is "clear that the complaint could not be saved by any amendment," usually through the allegation of additional facts.[21]

### C. Amendments are Freely Granted.

Because the motions to dismiss are so disfavored, the Ninth Circuit Court of Appeals has repeatedly held that in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.[22] In this regard, FRCP Rule 15(a) provides, in pertinent part, that after expiration of the time for amendment by right, a party may amend his pleadings by leave of court, and that such leave shall be "freely granted":

> A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend at any time within 20 days after it is served. Otherwise *<u>a party may amend his pleadings only by leave of court or by written consent of the adverse parties; and leave</u>*

---

[20] Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001).

[21] In re Silicone Graphics Inc. Securities Litigation, 183 F.3d 970, 991 (9th Cir. 1999)(internal quotations and citations omitted).

[22] Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962), *citing* Sidebotham v. Robison, 216 F.2d 816, 826 (9th Cir. 1954); *See also*, Doe v. United States (In re Doe), 58 F.3d 494, 497 (9th Cir. 1995) (same); Erlich v. Glasner, 352 F.2d 119, 122 (9th Cir. 1965).

6

*shall be freely given when justice so requires*. (Emphasis added).

Courts construing Rule 15(a), although conceding that leave to amend is discretionary with the Court, have urged great liberality in granting a motion for leave to amend. This view was possibly best stated by the U.S. Supreme Court in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), in which the Court said:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-- the leave sought should, as the rules require, be 'freely given.'

*See also,* Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) ("[In Foman v. Davis], [t]he Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R.Civ.P., by freely granting leave to amend when justice so requires.").

The factor usually given the greatest weight by courts in considering such a motion is the factor of prejudice. If it appears clear to the court that the Defendants will suffer no material prejudice if leave to amend is granted, the motion is usually granted. Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3rd Cir. 1984); Gardner v. Southern Railway Systems, 675 F.2d 949 (7th Cir. 1982); Corey v. Look, 641 F.2d 32 (1st Cir. 1981); Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir. 1980), *cert. denied*, 448 U.S. 911.

Rule 15(a) sets forth no express time limit on permissive amendment. Courts, construing the rule quite liberally, have granted motions for leave to amend at various stages

7

in a proceeding, without regard to time, including at the hearing on an opposing party's motion to dismiss and even after a motion to dismiss has been granted, but before entry of the order of dismissal. This policy is addressed by 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, § 1488 at 652, *et seq.*:

> Quite appropriately the courts have not imposed any arbitrary time restrictions on a party's request for leave to amend and permission has been granted under Rule 15(a) at various stages of the litigation: following discovery; after a pre-trial conference; *<u>at a hearing on a motion to dismiss</u>* or for summary judgment; *<u>after a motion to dismiss has been granted but before the order of dismissal has been entered</u>*; when the case is on the trial calendar and has been set for a hearing by the district court; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal. (Emphasis added; extensive footnote citations omitted).

*See also e.g.* Hurn v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry of Southern California, 648 F.2d 1252 (9th Cir. 1981) (granting leave to amend even though 2 years had passed since filing of complaint); Cornwall v. U.S. Construction Manufacturing, Inc., 800 F.2d 250 (Fed. Cir. 1986) (motion made on eve of trial).

Thus, as long as the opposing party is not prejudiced by the amendment, it should be allowed. Boileau v. Bethlehem Steel Corp., 730 F.2d 929 (3rd Cir. 1984), *cert. denied*, 469 U.S. 871. Indeed, in SEC v. National Student Marketing Corp., 73 F.R.D. 444 (D.C. Cir. 1977), the court concluded that a motion for leave to amend the complaint appropriately should be granted despite the fact that the motion was filed five years after the original complaint was filed.

8

## II

## OCCIDENTAL HAS BREACHED ITS FIDUCIARY DUTY TO NETCOR

NetCor's complaint alleges that Occidental was a fiduciary of NetCor and, therefore, owed a duty of loyalty to the corporation as a shareholder of preferred stock in NetCor. *See,* ¶¶ 13, 17, 18, 19, 20. These allegations are sufficiently detailed, under the notice pleading requirements, to survive Occidental's 12(b)(6) motion. NetCor asserts that, once Occidental became a shareholder in the holding company, it owed a duty of loyalty to NetCor to disclose conflicts of interest. NetCor believes that the evidence will establish that Occidental was more than a "mere shareholder" in the holding company, that it controlled not only the structure of the transaction that is the subject of the lawsuit, but that it also dictated key elements including the formation of a holding company (NetCor) to purchase Occidental's insurance business and a subsidiary of NetCor (NetCare Life and Health Insurance Company) to operate the business.

Occidental argues that NetCor's Cause of Action for Breach of Fiduciary Duty should be dismissed because "mere ownership of preferred stock, as alleged by NetCor, is insufficient to create a fiduciary relationship,"[23] and cites to the case of Sager Statewide Supply Company, Inc. v. Meyer, 273 A.D.2d 745 (N.Y. App. Div. 2000). Sager is wholly distinguishable from the case at bar because there, unlike here, the court found that there was "no evidence that [the defendant (an owner of preferred stock in plaintiff company)],

---

[23] Occidental's Memorandum of Points and Authorities in Support of Motion to Dismiss Counterclaims at p. 4 (D. Ct. Guam Nov. 15, 2004).

9

participated in the management and control of the corporation or that his relationship with the holders of plaintiff's common stock was akin to that between partners."[24] By contrast, OLIC was deeply involved in the plaintiff's operations since the genesis of the company and NetCor believes that evidence will establish that OLIC acted more like NetCor's partner than a mere shareholder in the company. Even the court in Sager recognized that under such circumstances, a fiduciary relationship is created.

> In this regard, the New York appellate court reasoned as follows:
>
> On the other hand, "[d]irectors of a corporation and in some cases stockholders who dominate and control a corporation, occupy a position of 'partial trust' ... and they may be held accountable in equity for detriment to the corporation caused by their breach of the fiduciary obligation arising from that relationship" (Equity Corp. v Groves, 294 NY 8, 12 [citation omitted], see, Alpert v 28 Williams St. Corp., 63 NY2d 557, 568-569). Courts have also recognized the existence of a fiduciary duty between the shareholders of a close corporation (see, e.g., Cassata v Brewster-Allen-Wichert, Inc., 248 AD2d 710), a duty based upon the theory that the relationship between such shareholders is akin to that between partners (see, Fender v Prescott, 101 AD2d 418, 422, affd 64 NY2d 1077).[25]

It is those exceptional circumstances which are more akin to the circumstances at bar. NetCor believes the evidence will establish the following facts: In 1997, Occidental approached the Moylans with the proposal to sell to the Moylans OLIC's book of insurance business (the "insurance portfolio") in Guam, CNMI and Micronesia. James W. Lillie, Jr. ("Lillie"), as OLIC's representative, made representations to Kurt Moylan about the value of

---

[24] Sager Statewide Supply Company, Inc. v. Meyer, 273 A.D.2d 745, 748 (N.Y. App. Div. 2000)

[25] Id.

10

the insurance portfolio in order to induce the Moylans to purchase it. However, OLIC's involvement in the transaction was more than as a "seller" of a business. Instead, OLIC, through J. Lillie, acting as OLIC's "chairman," legal counsel and other OLIC-sanctioned roles, orchestrated the structure of the sale to and purchase by NetCor of the insurance portfolio.

From conceptualizing the purchasing entity as a holding company (NetCor), to creating a subsidiary life insurance company for the purposes of operating the business and acting as OLIC's "alter ego" following the transfer (NetCare Life and Health Insurance Company), to identifying the company that would act as a third party administrator of the transferred policies (PacWest, LLP), OLIC acted more like a partner than a friendly adversary in the transaction. OLIC's efforts to be actively involved in the partnership and management of NetCor's and its subsidiary's affairs only increased after OLIC became the sole holder of the Preferred Shares of stock in NetCor pursuant to a stock subscription agreement executed by the parties on December 31, 1998. As a holder of the *preferred* shares, although it had no voting rights, OLIC is paid dividends before any of the common stockholders and, indeed, before NetCor is further capitalized.

It is not insignificant that, at the time of the sale to NetCor of the insurance portfolio, OLIC's parent company PennCorp Financial Group (hereinafter "PFG," which is, notably, a holding company) was suffering from severe financial difficulties including debt in the hundreds of millions. OLIC represented to NetCor that OLIC's business was one of the better performing subsidiaries of PFG, then it set up a computer operating system that would make it difficult – if not impossible – to track the performance of the book of business until

11

after all of OLIC's preferred stock in NetCor had been redeemed and OLIC paid millions of dollars for a business which would result in over $2 million in losses to NetCor's subsidiary.

After inducing NetCor to buy its non-performing book of business in exchange for, *inter alia*, **preferred** shares of stock in the Company, OLIC then embedded its legal counsel and chairman J. Lillie into a directorship position of NetCor's only subsidiary. With its attorney and chairman orchestrating the operations of NetCor's only subsidiary, OLIC ensured that its fraud would not be discovered until well after it had been paid millions of dollars for a worthless block of business.

Occidental also asserts that "the counterclaims also make clear that whatever misrepresentations were allegedly made by Occidental occurred before Occidental even became an owner of any stock in NetCor. As an outsider, there is again no fiduciary duty which arises between the parties."[26] Clearly, Occidental mischaracterizes the relationship between it and NetCor. Short of incorporating the Company, Occidental was actively involved in, if not primarily responsible for, the formation of NetCare – the company that would ultimately assume Occidental's portfolio of business from NetCor. It then dictated the provisions of NetCor's Articles of Incorporation relating to the payment of dividends to and ultimate redemption bu NetCor of the preferred shares held by Occidental. It is totally absurd, under the particular circumstances of this case, that Occidental now seeks to distance itself from NetCor by calling itself a "mere shareholder."

---

[26] Occidental's Memorandum of Points and Authorities in Support of Motion to Dismiss Counterclaims at p. 4 (D. Ct. Guam Nov. 15, 2004).

12

Under the circumstances, it is inappropriate to dismiss NetCor's claim for breach of fiduciary duty. In the event this Court should determine that the counterclaims as stated fail to provide adequate notice of the claims against Occidental (which is clearly not the case), NetCor respectfully submits that it should be given the opportunity to amend its counterclaims to allege with more specificity the close relationship between Occidental and NetCor for the purposes of establishing the fiduciary relationship.

### III.

### OCCIDENTAL'S MOTION TO DISMISS NETCOR'S FRAUD CLAIM SHOULD BE DENIED

**D.     NetCor's Complaint Satisfies the Requirements of Rule 9(b).**

In Semegen v. Weidner,[27] the Ninth Circuit clearly, concisely, and unequivocally set forth the purpose of Rule 9(b) as follows:

> Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *See Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977). It also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants--especially professionals whose reputations in their fields of expertise are most sensitive to slander--from the harm that comes from being charged with the commission of fraudulent acts.[28]

---

[27] Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1985).

[28] Id., at 731.

13

In other words, in the Ninth Circuit, a pleading satisfies the particularity requirement if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.[29]

As set forth in NetCor's counterclaim, the relevant allegations of fraud against Occidental include specific reference to the particular false statements by Occidental's president, James W. Lillie Jr., to NetCor:

> 23. During the relevant period, OLIC, though its president James W. Lillie, Jr., made representations to NetCor about the value of OLIC's insurance portfolio which were material and false, and OLIC, through its president James W. Lillie, knew they were false. These false statements include, but are not limited to, the following material and false statements:
>
>> A. That none of the policies in OLIC's portfolio of insurance business in Guam and Micronesia had lapsed or terminated;
>>
>> B. That there were no pending claims by any person, firm or corporation on the policies to be assumed by NetCor, and eventually, NetCare; and,
>>
>> C. That OLIC was not aware of any fact or condition which materially impaired or diminished the value of the policies to be transferred to NetCor and then to NetCare.[30]

---

[29] Deutsch v. Flannery, 823 F.2d 1361, 1365 (9th Cir. 1987) (*citing* Gottreich, *supra*, at 866, and Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973)).

[30] NetCor, Inc. Holding Company's Counterclaim, at ¶ 23(A)–(C) (D. Ct. Guam Oct. 27, 2004).

14

The counterclaim also alleges that Occidental fraudulently concealed its false statements from NetCor, and that to its detriment, NetCor relied upon the false statements and agreed to purchase Occidental's portfolio of insurance policies and to give Occidental 20,000 shares of NetCor preferred stock:

> 24. OLIC fraudulently concealed material facts from NetCor despite a duty to disclose those facts, as alleged above.
>
> 25. OLIC made these representations and failed to disclose such material facts, knowing that NetCor would rely on its misrepresentations and concealment in agreeing to the purchase of the portfolio of insurance policies and further agreeing to the Subscription Agreement through which OLIC obtained the 20,000 shares of Class A Preferred Stock in NetCor.
>
> 26. Each of the above misrepresentations and concealment were made for the purpose of inducing NetCor to rely upon them.
>
> 27. NetCor did, in fact, rely upon such misrepresentations, in ignorance of the representations' falsity, and NetCor has been, and continues to be, damaged as a result of OLIC's misconduct alleged herein.
>
> 28. OLIC is guilty of fraud and NetCor is, therefore, entitled to recover actual and exemplary damages from OLIC in an amount to be determined at trial.[31]

A plain reading of the above allegations shows that the subject matter and acts constituting fraud are clearly set forth within the four corners of NetCor's Counterclaim. As required in the Ninth Circuit, the Counterclaim gives "notice of the particular misconduct

---

[31] NetCor, Inc. Holding Company's Counterclaim, at ¶¶ 24-28 (D. Ct. Guam Oct. 27, 2004).

15

which is alleged to constitute the fraud charged" sufficient to give Occidental a chance to defend against the charge and not just deny that it has done anything wrong.

In any event, should the Court determine that NetCor's fraud claim is deficient, NetCor respectfully requests that it be given an opportunity to amend its Second Cause of Action in order to assert any required details, as well as any additional details or claims demonstrating fraud on the part of Occidental.

### V.

### OCCIDENTAL'S MOTION TO DISMISS THE REQUEST FOR PUNITIVE DAMAGES IN NETCOR'S NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DENIED

Finally, Occidental argues that NetCor's Third Cause of Action (Negligent Misrepresentation) is a "garden variety" negligence claim and that therefore punitive damages are not available because no allegations supporting Occidental's guilty conduct have been made.

On the contrary, NetCor's claim for Negligent Misrepresentation is essentially identical to its Fraud claim. The same facts and allegations supporting the Fraud claim likewise also support the Negligent Misrepresentation claim. Indeed, negligent misrepresentation is a form of "actual fraud." Under 18 GCA § 85308(2) which defines "actual fraud", the tort of negligent misrepresentation is described as, "The positive assertion, in a

16

manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."[32]

The basic elements of a fraud action of this type that must be pleaded and proved, are well settled. The plaintiff must plead and prove that defendant made a representation of a material fact; that such fact was false; that defendant knew it to be false or negligently or recklessly made the assertion as a fact without reasonable grounds to believe it to be true; that such representation was made with intent to induce the other party to act upon it; that it was relied upon by the other party to his damage.[33]

Finally, the plain language of Guam's punitive damages statute (20 GCA § 2120) permits the recovery of punitive damages where the defendant has been guilty of "oppression, *fraud*, or malice, express or *implied*." On its face, NetCor's Negligent Misrepresentation claim not only implies, but outright alleges, that Occidental committed acts of fraud against NetCor. Moreover, despite Occidental's argument otherwise regarding guilty conduct, under § 85308(2), scienter or an intent to deceive is not necessarily a part of the cause of action. Therefore, as long as a negligent misrepresentation is made with intent to induce

---

[32] *See also*, Gagne v. Bertran, 43 Cal.2d 481, 487, 275 P.2d 15, fn. 4 (Sup. Ct. Cal. 1954); Clar v. Board of Trade, 164 Cal.App.2d 636, 644, 331 P.2d 89 (C.A.1 Cal. 1958); 4 WITKIN, SUMMARY OF CAL. LAW (8TH ED.) TORTS, § 481, p. 2740.

[33] Cox v. Westling, 96 Cal.App.2d 225, 215 P.2d 52, 54-55 (C.A.3d Cal. 1950).

17

the other party to enter into the contract, if the other elements of fraud exist, the tort is actionable.[34]

### VI.

### NETCOR SHOULD BE GIVEN A CHANCE TO AMEND

As discussed above, courts routinely give plaintiffs (or, as here, counterclaim plaintiffs) a chance to amend the complaint before employing the severe sanction of dismissal. Although NetCor believes and urges this Court to find that the allegations have been sufficiently pled, NetCor hereby requests leave of Court to amend in the event the Court finds that any of the causes of action have not been sufficiently stated. The standard of notice pleading simply requires enough information for defendant to answer the allegations and know what the case is about. That standard has certainly been met here and it should not be necessary to go through the process of amending the counterclaims. However, if the Court believes it is necessary, NetCor is prepared to do so and requests leave to do so within a reasonable time as determined by this Court.

### CONCLUSION

NetCor's Counterclaim satisfies the notice pleading requirements of Rule 8. The allegations contained in the Counterclaim in support of the First Cause of Action for Breach of Fiduciary Duty, the Second Cause of Action (Fraud) and its Third Cause of Action (Negligent Misrepresentation) are sufficient to alert Occidental as to the basis of the claims

---

[34] Gagne, 275 P.2d at 15, fn. 4; Gonsalves v. Hodgson, 38 Cal.2d 91, 237 P.2d 656 (Sup. Ct. Cal. 1951); Richard v. Baker, 141 Cal.App.2d 857, 297 P.2d 674 (C.A.1 Cal. 1956).

against it sufficient for it to prepare a response. The crux of NetCor's counterclaim is that Occidental made material misrepresentations in order to induce NetCor to enter into an agreement for the purchase of Occidental's book of business in Guam, CNMI and Micronesia. Because of the extent of Occidental's participation in the formation of NetCor, including the drafting of amendments to NetCor's Articles of Incorporation with respect to provisions relating to the rights of preferred shareholders, Occidental owed a fiduciary obligation to NetCor. Under the circumstances, Occidental was required to disclose material information to NetCor which only Occidental possessed. Its failure to do so thereby damaged NetCor and NetCor is entitled to proceed against Occidental to recover compensation for those damages.

Accordingly, NetCor submits that Occidental's motion should be denied.

Respectfully submitted this 3rd day of December, 2004.

          **MAIR, MAIR, SPADE & THOMPSON**
          A Professional Corporation
          Attorneys for Defendant/Counterclaim-Plaintiff
          NetCor, Inc. Holding Company

By_____ for
  DAVID A. MAIR

P042167a.sec

19