MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
238 A.F.C. Flores Street
Suite 801, Pacific News Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090
Facsimile: (671) 477-5206



**FILED**
DISTRICT COURT OF GUAM

FEB 15 2005

**MARY L.M. MORAN
CLERK OF COURT**



Attorneys for Defendant/Counterclaim-Plaintiff
  NetCor, Inc. Holding Company,

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, ) ) ) Plaintiff, ) ) v. ) ) NETCOR, INC. HOLDING COMPANY, ) ) Defendant. ) _____) NETCOR, INC. HOLDING COMPANY, ) ) Counterclaim-Plaintiff, ) ) v. ) ) OCCIDENTAL LIFE INSURANCE ) COMPANY OF NORTH CAROLINA, ) ) Counterclaim-Defendant. ) ) _____) | CIVIL CASE NO. 04-00041  **NETCOR, INC. HOLDING COMPANY'S FIRST AMENDED ANSWER AND COUNTERCLAIMS AND DEMAND FOR JURY TRIAL** |

# ORIGINAL

COMES NOW Defendant, NetCor, Inc. Holding Company and replies to Plaintiff Occidental Life Insurance Company of North Carolina's complaint as follows:

1.      Defendant denies generally and specifically the allegations set forth in paragraphs 5, 8, 9, 10, 13, 16, 17, 18, 19, 22, 23, 25, 26 and 28 of Plaintiff's Complaint.

2.      Defendant is without sufficient information to either admit or deny the allegations set forth in Paragraph 1. As a consequence, Defendant denies the allegations set forth in Paragraph 1.

3.      Defendant admits the allegation set forth in paragraph 2 of Plaintiff's Complaint.

4.      In response to paragraph 3 of Plaintiff's Complaint, Defendant admits that this Court has jurisdiction based on diversity and the amount in controversy, however, Defendant is without sufficient knowledge to form a belief as to Plaintiff's domicile and, therefore, denies all other allegations in paragraph 3 of the Complaint.

5.      In response to paragraph 4 of Plaintiff's Complaint, Defendant denies that 48 U.S.C. §§ 1421i(h) designates the District Court of Guam as the proper venue of this lawsuit.

6.      In response to Paragraph 6 of the Complaint, Defendant admits that the Moylans had discussions with J. Lillie, Jr. (hereinafter "Lillie). However, inasmuch as the Plaintiff does not specifically identify "a certain group of life and health insurance policies" in Paragraph 6, Defendant lacks sufficient information to admit or deny the remainder of the

1

allegations therein. As a consequence, except for the allegations admitted herein, all of the allegations set forth in Paragraph 6 are hereby denied.

7.　　In response to Paragraph 7, inasmuch as the specific policies are not identified by Plaintiff, Defendant lacks sufficient information to admit or deny the allegations in this Paragraph. As a consequence, all of the allegations are hereby denied.

8.　　Defendant admits the allegation in paragraph 11 of Plaintiff's Complaint that states that the Articles of Incorporation of NetCor Inc. Holding Company were amended. Defendant denies all other allegations therein and, more specifically, denies that there were any agreements between the parties to the action referred to in Paragraph 11.

9.　　In response to the allegations in Paragraph 12, Defendant denies generally and specifically that dividends were paid by NetCor and further avers that any payments to Plaintiff from NetCor were not legally available as dividend payments.

10.　　In response to Paragraph 14, Defendant denies all allegations regarding what was "contemplated" by the parties to this action, as set forth in the Agreements attached to Plaintiff's Complaint as Exhibits "A" through "K." As a consequence, all of the allegations of Paragraph 14 are hereby denied.

11.　　In response to Paragraph 15, Defendant specifically denies that it has any obligations to Plaintiff to either pay dividends to Plaintiff or redeem any of the 20,000 shares of Defendant's Class A preferred stock on September 30, 2003 or earlier.

2

12.     In response to Paragraph 20, Defendant specifically denies that it has any obligation to Plaintiff to redeem any of the 20,000 shares of Defendant's Class A preferred stock. As a consequence, all of the allegations set forth in Paragraph 20 are hereby denied.

13.     In response to Paragraph 21, Defendant generally denies that OLIC has been damaged by Defendant and specifically denies that it has any obligations to Plaintiff to either pay dividends to Plaintiff or redeem any of the 20,000 shares of Defendant's Class A preferred stock on September 30, 2003 or earlier.

14.     In response to Paragraph 24, Defendant denies that it is estopped from making any objections and further denies that Defendant has received any benefit from Plaintiff.

15.     In response to Paragraph 27, Defendant denies all allegations that the terms of any alleged agreement between the parties to this action entitle the Plaintiff to recover attorneys fees from Defendant.

16.     Defendant specifically denies that Plaintiff is entitled to any relief requested in its Complaint or in its prayer for relief.

17.     Any allegations and requests for relief not specifically admitted herein are expressly denied.

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state a claim against Defendant for which relief can granted pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

3

2. Plaintiff's claims are barred for failure to comply with Guam's Business License Laws pursuant to 11 G.C.A. §70130(d) and (g).

3. Plaintiff's claims are barred pursuant to Guam's Corporate Laws, specifically, 18 G.C.A. §4105.

4. Plaintiff's claims are barred pursuant to Guam's Corporate Laws, specifically, 18 G.C.A. §7104.

5. Plaintiff's claims are barred by the Doctrine of Unclean Hands.

6. Plaintiff's claims are barred for Breach of Fiduciary Duty owed to NetCor.

7. Plaintiff's claims are barred because it is guilty of unfair or inequitable conduct and the Plaintiff took unfair advantage of Defendant;

8. Plaintiff's claims are barred because it breached its Duty of Disclosure owed to Defendant.

9. Plaintiff's claims are barred based on the Doctrine of Good Faith and Fair Dealing.

10. Plaintiff's claims are barred for knowingly and fraudulently making false statements affecting the value of shares.

11. Plaintiff's claims are barred by the Doctrine of Self-Dealing.

12. Plaintiff's equitable claims are barred because it has an adequate remedy at law.

13. Plaintiff's claims are barred based on the Doctrine of Laches.

4

14. Plaintiff's claims are barred based on Estoppel.

15. Plaintiff is barred from recovering against Defendant due to fraud committed by its president James W. Lillie, Jr. and others.

16. Plaintiff is barred from recovering attorney's fees against Defendant because it has no contract with Defendant which permits recovery of attorneys' fees.

17. As a shareholder of Defendant NetCor, Plaintiff's claims are limited to a shareholder derivative action and cannot recover under the causes of action set forth in its Complaint.

18. Any claim of Plaintiff against Defendant is limited to liquidated damages, which cannot be collected by the Plaintiff due to the statute of limitations.

19. At most, Defendant only agreed to pay Plaintiff dividends declared by the Board of Directors of Defendant out of funds legally available therefor. Defendant has no obligation to pay such dividends because they have not been declared by the Board, and there are no legally available funds to pay for such dividends.

20. Plaintiff cannot recover because of a lack or failure of consideration.

21. Plaintiff cannot recover because it does not hold legal title to the Class A Preferred Shares of NetCor.

22. Plaintiff's claims are barred by the doctrine of impossibility of performance.

23. Plaintiff has not performed its obligations under the applicable agreements and, as a consequence, cannot enforce the agreements against the Defendant.

5

24. Plaintiff's claims are barred by the statute of limitations.

25. Plaintiff has failed to follow the applicable provisions of Guam law as well as the Articles and Bylaws of the Defendant.

26. Plaintiff cannot recover due to its non-performance of a condition precedent required under its contract with Defendant.

27. Plaintiff cannot recover from Defendant because the contract sought to be enforced is an *ultra vires* contract.

28. Plaintiff's claims are barred by the doctrine of illegality.

29. NetCor is not responsible for any monetary obligations, if any, of NLHIC to OLIC. Likewise, NLHIC is not responsible for any monetary obligations, if any, of NetCor to OLIC.

## COUNTERCLAIMS

Independent of the foregoing Answer, Counterclaim Plaintiff NetCor, Inc. Holding Company ("NetCor") makes and presents the following counterclaims against Counterclaim Defendant Occidental Life Insurance Company of North Carolina ("OLIC") and respectfully represents to the Court as follows:

## Jurisdiction

1. The Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §1367(a).

2. At all times relevant to this action, NetCor was and is duly incorporated, licensed and authorized to conduct its business on Guam.

6

3.     On information and belief and at all times relevant to this action, OLIC was and is a Texas Corporation with its principal office located in Waco, McLennan County, Texas.

## Factual Background

4.     In 1997, OLIC approached Kurt S. Moylan and Kaleo S. Moylan (the "Moylans") with the proposal to sell to the Moylans OLIC's book of insurance business ("insurance portfolio") in Guam, CNMI and Micronesia.

5.     During negotiations in 1997 with NetCor incorporators Kurt S. Moylan and Kaleo S. Moylan for the purchase by NetCor of OLIC's portfolio of insurance business in Guam and Micronesia, OLIC was represented by its president James W. Lillie, Jr., who at all times relevant herein represented to the Moylans that he was authorized to enter into negotiations and contracts on behalf of OLIC. NetCor was incorporated on December 15, 1997, and, following its incorporation, ratified the authority of the Moylans to act on its behalf during the 1997 negotiations.

6.     On February 25, 1998, NetCor and OLIC entered into a Transfer Agreement (the "NetCor-OLIC Transfer Agreement") which provided for the purchase by and transfer to a life insurance company to be formed by NetCor Inc. of all of OLIC's book of insurance business in Guam and Micronesia.

7.     On April 2, 1998, NetCare Life and Health Insurance Company ("NLHIC"), a subsidiary of NetCor, was granted a Certificate of Authority by the Guam

7

Insurance Commissioner to do business in Guam as a domestic insurer. NetCor and NLHIC are distinct legal entities.

8.      On April 31, 1998, NetCor assigned the NetCor-OLIC Transfer Agreement to NLHIC in exchange for shares of common stock in NLHIC and further made a capital cash contribution to NLHIC.

9.      On July 15, 1998, OLIC and NLHIC entered into an Agreement for Transfer and Assumption of Insurance Portfolio (the "Assumption Agreement") whereby NLHIC agreed to purchase OLIC's policies of life and health insurance in Guam and Micronesia. The Assumption Agreement was subsequently amended on September 15, 1998, and November 30, 1998, respectively.

10.     NetCor is not a party to the Assumption Agreement; however, Amendment No. 2 to the Assumption Agreement dated November 30, 1998, provided as a condition of Closing that "NetCor shall deliver to OLIC's representatives the preferred stock as described in the Subscription Agreement."

11.     On December 31, 1998, NetCor, NLHIC and OLIC entered into a Contract For Sale And Transfer Of Insurance Portfolio ("Contract for Sale"), wherein specific reference is made to the Assumption Agreement dated July 15, 1998, as well as other agreements. OLIC intended for NetCor to rely upon the representations of OLIC as contained in the Assumption Agreement dated July 15, 1998, as well as its Amendments.

12.     On December 31, 1998, OLIC and NetCor entered into a Subscription Agreement whereby NetCor issued to and OLIC received Twenty Thousand (20,000) shares

8

of Class A Preferred Stock in NetCor, Inc. The Subscription Agreement was entered into contemporaneously with the Contract for Sale.

## FIRST CAUSE OF ACTION

### FRAUD

13.     NetCor hereby re-alleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 12 and 48 through 71 of its Counterclaim.

14.     On May 8, 1997, Kurt Moylan sent a Non-binding Letter of Intent to OLIC for the acquisition of OLIC's portfolio of business. This Non-binding Letter of Intent initiated the negotiations between OLIC and NetCor for the purchase of OLIC's book of business in Guam, Saipan and Micronesia.

15.     During the period from May, 1997, through December, 1998, OLIC, NLHIC and NetCor engaged in negotiations and discussions resulting in the execution of various documents including the following:

>          a.      Transfer Agreement dated December 4, 1997, between OLIC and Kurt and Kaleo Moylan (the "Moylans"), as incorporators of NetCor Inc. (the "OLIC-Moylans Transfer Agreement");
>
>          b.      Transfer Agreement dated February 25, 1998, between NetCor and OLIC providing for the purchase of OLIC's book of business (the "NetCor - OLIC Transfer Agreement");

9

c.      Assignment from NetCor Inc. to NetCare Life and Health Insurance Company dated April 31, 1998, of the Transfer Agreement between OLIC and NetCor;

d.      Agreement for the Transfer and Assumption of Insurance Portfolio (the "Assumption Agreement") between OLIC and NLHIC, dated July 15, 1998;

e.      Subscription Agreement between OLIC and NetCor dated December 31, 1998;

f.      Contract for Sale and Transfer of Insurance Portfolio ("Contract for Sale") dated December 31, 1998; and

g.      Closing Memorandum dated December 31, 1998.

16.      OLIC required NetCor to form a Guam domestic insurance company, NetCare Life and Health Insurance Company, for the purpose of assuming the OLIC-Moylan Transfer Agreement and executing the NetCare-OLIC Transfer Agreement and, ultimately, operating the business of life insurance and administering the policies assumed from OLIC.

17.      On July 15, 1998, OLIC through its president James W. Lillie, Jr., made representations to Kaleo S. Moylan, who at the time was an authorized representative of NetCor, about the value of OLIC's insurance portfolio which were material and false, and OLIC, through its president James W. Lillie, knew they were false. Additionally, OLIC, through J. Lillie, failed to exercise reasonable care or competence in obtaining or communicating the false information to Moylan.

10

18.     These false statements of OLIC and Mr. Lillie on July 15, 1998, are contained in the Assumption Agreement and include, but are not limited to, the following material and false statements:

a.      That none of the policies in OLIC's portfolio of insurance business to be assumed in Guam and Micronesia had lapsed or terminated; and

b.      That OLIC was not aware of facts or conditions which materially impaired or diminished the value of the policies to be transferred to NetCor and then to NLHIC.

19.     OLIC, through J. Lillie, made these misrepresentations with the knowledge that NetCor would rely on the representations, and NetCor did rely on these misrepresentations.     20.     OLIC fraudulently concealed material facts from NetCor despite a duty to disclose those facts, as hereinafter alleged in Paragraphs 48 to 71 of this Counterclaim, which are incorporated herein by reference.

21.     OLIC made these representations and failed to disclose such material facts, knowing that NetCor would rely on its misrepresentations and concealment in agreeing to the purchase of the portfolio of insurance policies and further agreeing to execute the Subscription Agreement on December 31, 1998, through which OLIC obtained the 20,000 shares of Class A Preferred Stock in NetCor.

22.     Each of the above misrepresentations and concealment were made for the purpose of inducing NetCor to rely upon them.

11

23.     NetCor did, in fact, rely upon such misrepresentations, in ignorance of the representations' falsity, and on December 28, 1998, executed the Subscription Agreement with OLIC.

24.     During 2001, NetCor began to uncover some evidence of the fraud committed upon it by OLIC. The investigation into the extent of such fraud is on-going. NetCor was unable to discover the fraud at an earlier date as a consequence of OLIC's malfeasance and nonfeasance.

25.     NetCor has been damaged in an amount to be proved at the trial of this action.

26.     OLIC is guilty of oppression, fraud, or malice, express or implied, and NetCor, in addition to actual damages, may recover exemplary damages from OLIC for the sake of example and by way of punishing them, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION (IN THE ALTERNATIVE)

### NEGLIGENT MISREPRESENTATION

27.     NetCor hereby re-alleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 12 of its Counterclaim.

28.     On May 8, 1997, Kurt Moylan sent a Non-binding Letter of Intent to OLIC for the acquisition of OLIC's portfolio of business. This Non-binding Letter of Intent initiated the negotiations between OLIC and NetCor for the purchase of OLIC's book of business in Guam, Saipan and Micronesia.

12

29.     During the period from May, 1997, through December, 1998, OLIC, NLHIC and NetCor engaged in negotiations and discussions resulting in the execution of various documents including the following:

a.     Transfer Agreement dated December 4, 1997, between OLIC and Kurt and Kaleo Moylan (the "Moylans"), as incorporators of NetCor Inc. (the "OLIC-Moylans Transfer Agreement");

b.     Transfer Agreement dated February 25, 1998, between NetCor and OLIC providing for the purchase of OLIC's book of business (the "NetCor - OLIC Transfer Agreement");

c.     Assignment from NetCor Inc. to NetCare Life and Health Insurance Company dated April 31, 1998, of the Transfer Agreement between OLIC and NetCor;

d.     Agreement for the Transfer and Assumption of Insurance Portfolio (the "Assumption Agreement") between OLIC and NLHIC, dated July 15, 1998;

e.     Subscription Agreement between OLIC and NetCor dated December 31, 1998;

f.     Contract for Sale and Transfer of Insurance Portfolio ("Contract for Sale") dated December 31, 1998; and

g.     Closing Memorandum dated December 31, 1998.

13

30. OLIC required NetCor to form a Guam domestic insurance company, NetCare Life and Health Insurance Company, for the purpose of assuming the OLIC-Moylans Transfer Agreement and executing the NetCare-OLIC Transfer Agreement and, ultimately, operating the business of life insurance and administering the policies assumed from OLIC.

31. On July 15, 1998, OLIC through its president James W. Lillie, Jr., made representations to Kaleo S. Moylan, who at the time was an authorized representative of NetCor, about the value of OLIC's insurance portfolio which were material and false. Additionally, OLIC, through J. Lillie, failed to exercise reasonable care or competence in obtaining or communicating the false information to Moylan.

32. These false statements of OLIC and Mr. Lillie on July 15, 1998, are contained in the Assumption Agreement and include, but are not limited to, the following material and false statements:

a. That none of the policies in OLIC's portfolio of insurance business to be assumed in Guam and Micronesia had lapsed or terminated;

b. That OLIC was not aware of facts or conditions which materially impaired or diminished the value of the policies to be transferred to NetCor and then to NLHIC.

33. OLIC negligently made these misrepresentations with the knowledge that NetCor would rely on the representations, and NetCor did rely on such misrepresentations.

34. OLIC negligently concealed material facts from NetCor despite a duty to disclose those facts, as alleged in Paragraphs 48 to 71 of this Counterclaim, which are

14

incorporated herein by reference. During 2001, NetCor began to uncover some evidence of the negligent conduct of OLIC. The investigation into the extent of such negligent conduct is on-going. NetCor was unable to discover the negligent conduct at an earlier date as a consequence of OLIC's malfeasance and nonfeasance. In addition, OLIC has a continuing duty to correct the wrongdoing referred to herein. OLIC has failed to fulfil this continuing duty and, as a consequence, the negligent conduct referred to herein is continuing and on-going.

35.     When OLIC negligently made these misrepresentations and failed to disclose such material facts, OLIC had a pecuniary interest in the transaction and knew that NetCor would rely on its misrepresentations and concealment in agreeing to the purchase of the portfolio of insurance policies and entering into Subscription Agreement.

36.     NetCor did, in fact, reasonably rely upon such false information, in ignorance of the representations' falsity.

37.     NetCor has been damaged in an amount to be proved at the trial of this action.

38.     OLIC is guilty of oppression, fraud, or malice, express or implied, and NetCor, in addition to actual damages, may recover exemplary damages from OLIC for the sake of example and by way of punishing them, in an amount to be determined at trial.

15

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT CLAIM

39.     NetCor hereby re-alleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 12 of its Counterclaim.

40.     Paragraph 1 of the Subscription Agreement between OLIC and NetCor states that "[c]onsideration for [the] issuance of the [Preferred] Stock is the contemporaneous transfer and assignment by OLIC of certain portions of OLIC's portfolio of insurance to NetCare Life and health Insurance Company."

41.     OLIC failed to perform its obligations under the Assumption Agreement upon which NetCor relied in entering into the Subscription Agreement, specifically:

a.     That none of the policies in OLIC's portfolio of insurance business to be assumed in Guam and Micronesia had lapsed or terminated; and

b.     That OLIC was not aware of facts or conditions which materially impaired or diminished the value of the policies to be transferred to NetCor and then to NLHIC.

42.     NetCor has fully complied with all conditions and terms imposed upon it under the terms of the Subscription Agreement.

43.     OLIC has materially breached the agreement by its violation of its warranties and representations made to NetCor, resulting in the failure of OLIC's consideration.

16

44.     OLIC was aware of its breaches of the agreement, but committed them

in secret thereby ensuring that its breaches would not be discovered by NetCor. During 2001,

NetCor began to uncover some evidence of the wrongdoing of OLIC. The investigation into

the extent of such wrongdoing is on-going. NetCor was unable to discover the wrongdoing

at an earlier date as a consequence of OLIC's malfeasance and nonfeasance. In addition, OLIC

has a continuing duty to correct the wrongdoing referred to herein. OLIC has failed to fulfil

this continuing duty and, as a consequence, the breaches referred to herein are continuing and

on-going.

45.     NetCor has been damaged in an amount to be proved at the trial of this

action.

46.     OLIC is guilty of oppression, fraud, or malice, express or implied, and

NetCor, in addition to actual damages, may recover exemplary damages from OLIC for the

sake of example and by way of punishing them, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY OWED TO NETCOR

47.     NetCor hereby re-alleges and incorporates by this reference as if fully

set forth herein the allegations contained in paragraphs 1 through 46 of its Counterclaim.

48.     At all times relevant herein, OLIC owed a fiduciary duty to NetCor not

only as a shareholder of preferred stock in NetCor, but also because of OLIC's substantial

involvement in dictating key elements of the transaction, including, but not limited to, the

17

formation of NetCor to purchase OLIC's insurance portfolio and the formation of NLHIC to operate the business.

49.    At all times relevant herein, OLIC's involvement in the transaction was more than merely as a "seller" of its insurance portfolio.

50.    OLIC, through J.W. Lillie, acting as OLIC's chairman, legal counsel and other OLIC sanctioned roles, orchestrated the structure of the sale to NetCor of OLIC's insurance portfolio.

51.    OLIC, through its representative J.W. Lillie and others, actively participated in, and was primarily responsible for the formation of NLHIC for the purposes of assuming and operating OLIC's insurance portfolio from NetCor and acting as OLIC's "alter ego" following the transfer.

52.    Furthermore, OLIC, through its representative J.W. Lillie and others, created and controlled the company (PacWest, LLP) that acted as a third party administrator of the transferred polices. J. Lillie was the President of PacWest, LLP.

53.    As OLIC's representative, J.W. Lillie made representations to Kurt Moylan about the value of the insurance portfolio in order to induce the Moylans to purchase all of OLIC's book of insurance business in Guam and Micronesia.

54.    OLIC, through its representative J.W. Lillie and others, increased its efforts to be actively involved in the management affairs of NetCor and NLHIC when OLIC allegedly became the sole holder of the Preferred Shares of Stock in NetCor pursuant to a Stock Subscription Agreement executed by the parties on December 31, 1998.

18

55. Furthermore, as an alleged shareholder of preferred stock in NetCor, OLIC claimed to have been given greater rights to the receipt of dividend payments than those granted to holders of common stock in NetCor.

56. OLIC continued its active participation in the management of NetCor and NLHIC when OLIC embedded its legal counsel and chairman J.W. Lillie into a directorship position in NLHIC, and allowed J. W. Lillie to act as counsel to NLHIC, thereby ensuring that its fraud would not be discovered.

57. OLIC, through its representative J.W. Lillie and others, then dictated the provisions of NetCor's Articles of Incorporation relating to payment of alleged dividends and the ultimate redemption by NetCor of the preferred shares held by OLIC.

58. Furthermore, OLIC, through its representative J.W. Lillie and others, ensured that as a condition of the sale of its insurance portfolio and as a holder of the preferred shares of stock in NetCor, OLIC would supposedly be paid dividends before any of the common stockholders and, indeed, before NetCor was further capitalized.

59. OLIC was deeply involved in the operations of both NetCor and NLHIC since the genesis of the companies and acted more like NetCor's partner than a mere shareholder in NetCor.

60. On or about December 31, 1998, OLIC's parent company PennCorp Financial Group (hereinafter "PFG") was suffering from sever financial difficulties including debt in the hundreds of millions.

19

61. OLIC, through J.W. Lillie and others, falsely represented to NetCor that OLIC's insurance portfolio in Guam and Micronesia was one of the better performing subsidiaries of PFG.

62. OLIC, through J.W. Lillie and others, set up a computer operating system to make it difficult, if not impossible, to track the performance of OLIC's insurance portfolio.

63. OLIC, through its representative J.W. Lillie and others, induced NetCor to buy OLIC's non-performing insurance portfolio in exchange for, inter alia, alleged preferred shares of stock in NetCor.

64. OLIC obtained the 20,000 shares of preferred stock by making the material misrepresentations already referred to in Paragraphs 18(a) and (b) and 32(a) and (b) of this Counterclaim to NetCor, which were calculated to induce NetCor's reliance thereon.

65. NetCor did rely on OLIC's material misrepresentations about the value of OLIC's insurance portfolio which resulted in the execution of the Subscription Agreement by which OLIC claims to have obtained 20,000 shares of Class A Preferred Stock in NetCor.

66. OLIC had a duty to disclose the misrepresentations made to NetCor, which misrepresentations were not in the best interest of the corporation and contrary to OLIC's duty of loyalty to the corporation.

67. OLIC's failure to disclose the material misrepresentations made to NetCor was a breach of its fiduciary duty of loyalty to the corporation.

20

68. OLIC has a continuing duty of loyalty to NetCor which requires it to disclose all conflicts of interest, including the discovery of any misrepresentations made to NetCor, and has breached its duty of loyalty by failing to disclose such conflicts.

69. OLIC has further breached its duty of loyalty to NetCor by bringing the instant suit against NetCor, instead of a shareholders' derivative suit.

70. NetCor has been damaged in an amount to be proved at the trial of this action.

71. OLIC is guilty of oppression, fraud, or malice, express or implied, and NetCor, in addition to actual damages, may recover exemplary damages from OLIC for the sake of example and by way of punishing them, in an amount to be determined at trial.

WHEREFORE, Defendant/Counterclaim-Plaintiff NetCor Inc. Holding Company prays for judgment as follows:

1. For general damages in an amount to be proven at trial;

2. For consequential damages proximately caused by the wrongful conduct of Plaintiff/Counterclaim-Defendant in an amount to be proven at trial;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For costs of the suit, including reasonable attorneys fees; and

5. For such other and further relief as the Court may deem just and proper, whether prayed for or not.

21

## DEMAND FOR JURY TRIAL

Defendant/Counterclaimant NetCor Inc. Holding Company hereby submits its

demand for a jury trial of all claims triable by a jury.

Dated this 15th day of February, 2005.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation
Attorneys for Defendant/Counterclaim-Plaintiff
NetCor, Inc. Holding Company

By _____
MARIA T. CENZON-DUENAS

P05809b.MTCD

22