MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
238 A.F.C. Flores Street
Suite 801, Pacific News Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090
Facsimile: (671) 477-5206

**FILED**
DISTRICT COURT OF GUAM

AUG - 2 2005

MARY L.M. MORAN
CLERK OF COURT

Attorneys for Defendant/Counterclaim Plaintiff
  NetCor, Inc. Holding Company

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, )<br><br>Plaintiff, )<br><br>v. )<br><br>NETCOR, INC. HOLDING COMPANY, )<br><br>Defendant. )<br>_____)<br>NETCOR, INC. HOLDING COMPANY, )<br><br>Counterclaim-Plaintiff, )<br><br>v. )<br><br>OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA, )<br><br>Counterclaim-Defendant. )<br>_____) | CIVIL CASE NO. 04-00041<br><br><br><br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NETCOR INC. HOLDING COMPANY'S MOTION FOR SUMMARY JUDGMENT** |

**ORIGINAL**

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Relevant Contracts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Subscription Agreement Defines NetCor's
           Obligations to Occidental . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    OLIC Received "Dividend" Payments From NetCor. . . . . . . . . . . . . . . . 6

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  I.     STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  II.    NETCOR IS ENTITLED TO SUMMARY JUDGMENT
       ON OLIC'S CLAIM FOR BREACH OF CONTRACT . . . . . . . . . . . . . . . . . . . 8

      A.    Guam Law Prohibits Dividend Payments to
           OLIC From Other Than *Surplus Profits*. . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    OLIC Has Failed to Perform under the Contract with NetCor. . . . . . . . . 12

  III.   OLIC IS NOT ENTITLED TO SPECIFIC PERFORMANCE . . . . . . . . . . . . . . 14

      A.    OLIC is in Material Breach of the Contract. . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52, 106 S.Ct. 2505, 2511 (1986). . . . . . . . . 7

Appleton v. American Malting Co., 65 N.J. Eq. 375. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323,
    106 S. Ct. 2548, 2552-2553 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18

Hogue-Kellogg Co. v. Petit, 192 P. 113, 115 (Cal.Ct.App. 1920) . . . . . . . . . . . . . . . . . . . . . . . . 12

Karales v. Los Angeles Creamery, 36 Cal.App. 171, 171 P. 821 (Cal.Ct.App. 1918). . . . . . . . . 13

Lewis Pub. Co. v. Henderson, 103 Cal.App. 425; 284
    P. 713, 715 (Cal. 1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rathbun et al. v. Security Mfg. Co., 82 Cal.App. 793; 256 P.2d 296,
    297 (Cal.Ct.App. 1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rothner v. Mermelstein, 219 Ill. App. 3d,
    579 N.E.2d 1022 (Ill. Ct. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Silver v. Bank of America, 47 Cal.App.2d 639, 118 P.2d 891,
    894 (Cal.Ct.App. 1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Southern California Home Builders v. R.O. Young, 45 Cal. App. 679, 188
    P. 586 (Ca. Ct. App. 1st D. 1920). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wolf v. City of Fitchburg, 870 F.2d 1327 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wood, Curtis & Co. v. Scurich, 5 Cal.App. 252, 90 P. 51(Cal.Ct.App. 1907). . . . . . . . . . . . . . 14

ii

| **STATUTES** | **PAGE(S)** |

18 G.C.A. § 4105 (Emphasis added). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 G.C.A. § 80406 (emphasis added). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iii

## INTRODUCTION

There are two principal grounds for entering a summary judgment in NetCor Inc. Holding Company's ("NetCor") favor on the claims asserted against it by Occidental Life Insurance Company ("OLIC"). First, NetCor is prohibited, under Guam law, from paying dividends except with *surplus profits* of the corporation. NetCor has not had surplus profits from which to pay dividends to OLIC; thus, NetCor is entitled to summary judgment on OLIC's claim for breach of contract and estoppel.

Second, OLIC has the burden, at trial, of establishing that it has fully satisfied all of its obligations under the pertinent agreements, including the Subscription Agreement between OLIC and NetCor for the subject shares. OLIC simply cannot satisfy this burden because it is irrefutable that OLIC transferred policies of insurance that it was not supposed to have transferred, resulting in a significant devaluation of the book of business transferred to NetCor's subsidiary, NetCare Life and Health Insurance Company.

The undisputed facts of this case establish that OLIC failed to transfer *in force* policies, transferring, instead, policies which OLIC itself considered worthless. OLIC itself admitted that: "My impression is that *we were lucky to sell it [the policies] at all*, since the agent could probably have replaced most of the business with another carrier and *we would have gotten nothing at all for it*."[1] OLIC has since devalued its Preferred Shares in NetCor to $-0-.[2]

---

[1] Declaration of William R. Replan (hereinafter "Replan Declaration") at ¶ 15, Exhibit M, filed concurrently herewith (8/2/05)(Emphasis added).

[2] Replan Declaration at ¶ 16.

1

For the reasons set forth herein, NetCor is entitled to summary judgment against all of OLIC's claims.

## STATEMENT OF FACTS

For the limited purpose of this instant Motion for Summary Judgment, NetCor assumes that the following facts, as set forth in OLIC's Complaint, are not in dispute; however, NetCor also reserves its right to oppose OLIC's allegations at the trial of this matter, should the instant motion be denied.

A.    **Relevant Contracts.**

On February 25, 1998, NetCor and OLIC entered into an agreement whereby NetCor agreed to purchase certain OLIC policies in Guam and Micronesia.[3]  In this Contract, NetCor and OLIC agreed that NetCor would assign the contract to its wholly owned subsidiary NetCare Life and Health Insurance Company ("NLHIC"), and upon the creation of NLHIC, the Contract was so assigned.[4]  The assignment was approved by OLIC.[5]

Over the course of several  months in 1998, NetCor, OLIC and NLHIC executed the following documents relating to the purchase of the OLIC policies which were to be transferred to and assumed by NLHIC (the "Assumed Policies"), respectively:  (1) Agreement for Transfer and Assumption

_____

[3]  Transfer Agreement dated February 25, 1998, between NetCor, the Moylans and OLIC, attached to OLIC's Complaint as Exhibit J.

[4]  *See*, Contract for Sale and Transfer of Insurance Portfolio dated December 31, 1998, attached as Exhibit O to Declaration of William R. Replan, filed concurrently herewith.

[5]  Closing Memorandum dated December 31, 1998, Section II(C), attached to OLIC's Complaint as Exhibit G.  See also, OLIC's Complaint at ¶9, pp. 2-3 (9/20/04).

2

of Insurance Portfolio between OLIC and NLHIC dated July 15, 1998, and amendments thereto dated

September 15, 1998 and November 30, 1998, respectively (collectively referred to as the "TAIP

Agreement"); (2) Subscription Agreement between NetCor and OLIC (the "Subscription Agreement")

dated December 31, 1998;[6] and (3) the Closing Memorandum between OLIC, NetCor and NHLIC dated

December 31, 1998 (the "Closing Memorandum").[7]  The Assumed Policies are defined in the TAIP

Agreement (and referred to by the parties in all related documents) as follows:

> All life and health insurance policies issued by OLIC in Guam, the
> Commonwealth of the Northern Mariana Islands "CNMI", the Federated
> States of Micronesia, the Marshall Islands, the Republic of Belau or
> Micronesia ("Subject Area"), *which as of the Closing Date are in
> force*, owned by the policyholders residing in the Subject Area, and
> covering insureds residing in the Subject Area, together with policies
> issued by OLIC between the Reference Date and the Closing Date in the
> Subject Area (the "Policy Pool") *and excluding any policies (i) which
> terminated or lapsed prior to the Closing Date (unless reinstated
> by NLHIC after the Closing Date)* or (ii) for which the policyholder
> has not given his/her consent to the assumption of his/her policy by
> NLHIC effectively under all applicable terms of the Notice of Transfer
> attached hereto as Exhibit A (*all of said policies with such referred to
> as "Assumed Policies"*).  The policies to be Assumed Policies are
> identified in a Policy List pursuant to (B) below (the "Policy List").[8]


**B.      Subscription Agreement Defines NetCor's Obligations to Occidental.**

Under the Subscription Agreement, OLIC agreed to take and NetCor agreed to issue

---

[6]  Subscription Agreement dated December 31, 1998, attached to OLIC's Complaint as Exhibit F.

[7]  All documents are attached as exhibits to OLIC's Complaint filed with this Court on September 20, 2004.

[8]  TAIP Agreement at Section I(A)(1) at pp. 1-2 (Emphasis added).

3

20,000 shares of NetCor's Preferred Stock in exchange for "the contemporaneous transfer and assignment by OLIC of certain portions of OLIC's portfolio of insurance to NetCare Life and Health Insurance Company ("NLHIC"), a life and health insurance company, which is [a] wholly-owned subsidiary of NHC, pursuant to that certain Agreement for Transfer and Assumption of Insurance Portfolio [the TAIP Agreement] . . ."[9]

The Subscription Agreement further provided that "OLIC shall not . . . be entitled to dividends or other benefits hereunder" unless certain conditions precedent were satisfied.[10] Among those conditions precedent was the requirement that "[a]ll conditions of Closing have been concurrently satisfied."[11] The conditions of Closing are set forth in the TAIP Agreement, as amended by the Amendment No. 2 to Agreement for Transfer and Assumption of Insurance Portfolio, which provides, in relevant part, as follows:

> (C) At the Closing both parties shall deliver all executed documents reasonably necessary to effectuate the transfer and assumption of the Assumed Policies and Assets, and shall proceed as follows: . . .
>
> (2) NetCor shall deliver to OLIC's representatives the preferred stock as described in the Subscription Agreement attached hereto as Exhibit D.
>
> (3) NLHIC shall receive and assume the Assumed Policies and shall assume their related fund values and reserves.

---

[9] Subscription Agreement at p. 1, ¶ 1.

[10] Subscription Agreement at pp. 1-2, ¶ 5(b).

[11] Id.

4

(4)     OLIC will transfer to a bank or any other account designated by NLHIC on or before December 27, 1998, cash amounts previously agreed as representing 100% of the statutory reserves held and accounted for by OLIC as of September 30, 1998, for the Assumed Policies, deducting therefrom the following:

(i)     Previously identified deferred premium assets on the Assumed Policies; and

(ii)     The amount of loans made to policyholders by OLIC Previously identified deferred premium assets on the Assumed Policies.

These amounts shall then be paid in immediately available funds at Closing to NLHIC or its order. (Such amounts have been calculated using numbers calculated as of September 30, 1998, and therefore shall be adjusted pursuant to Article VII ("Adjustments")).[12]

As the Closing Memorandum evidences, at Closing, NLHIC delivered to OLIC "$2.0 million stated value of Preferred Stock in NetCor, Inc., the parent Company of NLHIC, in payment for the transfer of the business represented by the *Assumed Policies*."[13]   At Closing, NLHIC also acknowledged and assumed liability under the "*Assumed Policies*."[14] However, subsequent to Closing, NLHIC determined that OLIC had not transferred Assumed Policies to NLHIC, i.e. they had received

---

[12]  Amendment No. 2 to Agreement for Transfer and Assumption of Insurance Portfolio, Section III(C)(2) - (5)(i), (ii), attached as Exhibit D to OLIC's Complaint.

[13]  Closing Memorandum at Section III(C), at p. 3 (Emphasis added).

[14]  Id. at Section III(D), p. 3 (Emphasis added).

5

policies that were not in force.[15] Instead of transferring only the policies that were still "in force," OLIC

transferred one thousand five hundred nineteen (1,519) Not-In-Force ("NIF") policies to NetCor's

subsidiary – resulting in OLIC's failure to satisfy a condition precedent under the Subscription Agreement.[16]

### C. OLIC Received "Dividend" Payments From NetCor.

Under the provisions of NetCor's Articles of Incorporation, as amended, OLIC was

entitled to dividend payments "as declared by the Board of Directors out of funds of the corporation legally

available therefor."[17] In addition, NetCor's Articles further provided for the redemption of the Class A

preferred stock at $100.00 per share in accordance with the following schedule: 1) 5,000 shares on or

before July 1, 2001; 2) 10,000 shares on or before July 1, 2002; 3) the balance of any shares outstanding

on or before September 30, 2003.[18]

On September 20, 2004, OLIC filed suit in the District Court of Guam seeking damages

for breach of contract and estoppel as well as for specific performance. OLIC alleges that NetCor has

failed to pay dividends "due and payable" to OLIC despite OLIC's demands for payment.[19] OLIC also

claims that NetCor has failed to redeem the 20,000 shares of Class A Preferred Stock "although demand

---

[15] Replan Declaration at ¶ 7, p. 3 (8/2/05), filed concurrently herewith.

[16] Replan Declaration at ¶ 7, p. 3 (8/2/05).

[17] (NetCor Inc. Amendment No. 3 to Articles of Incorporation at Section A (1). Attached as Exhibit H to OLIC's Complaint).

[18] Amendment No. 3 to Articles at Section C(1)(i) - (iii).

[19] OLIC's Complaint at ¶¶ 17 -21, pp. 5-6 (9/20/04).

6

has been made."[20] OLIC seeks actual damages of $2,120,000.00 "plus future dividends" as well as an order requiring NetCor to redeem the Preferred Shares.[21] NetCor submits that, under the facts alleged by OLIC (assumed to be true for the limited purposes of this motion), OLIC is not entitled to any such relief as a matter of law and that NetCor is entitled to summary judgment on the claims asserted by OLIC against NetCor.

## LEGAL DISCUSSION

### I.  STANDARD FOR SUMMARY JUDGMENT

Under the Federal Rules of Civil Procedure, summary judgment is proper "when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Wolf v. City of Fitchburg, 870 F.2d 1327 (7th Cir. 1989). When ruling on a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the party against whom judgment would be entered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52, 106 S.Ct. 2505, 2511 (1986). Where a party bears the burden of proof on an issue, it must make an affirmative showing on that issue in the context of summary judgment. Celotex Corp. v. Cattrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553 (1986).

Although the burden is on the moving party and the court must review the facts in a light most favorable to the non-moving party, if the movant can demonstrate that there exists no genuine issue

---

[20] OLIC's Complaint at ¶¶ 20, 25, pp. 5-6 (9/20/04).

[21] Id. at Article IX, ¶¶ 1-2.

of material fact, the non-movant cannot merely rely on the averments contained in the complaint, but must produce significant probative evidence tending to support the complaint. Anderson, 477 U.S. at 248, 249. OLIC has failed to establish that NetCor is legally obligated to pay dividends on and redeem the outstanding Preferred Shares. Therefore, NetCor is entitled to summary judgment on Plaintiff's First, Second and Third causes of action.

## II. NETCOR IS ENTITLED TO SUMMARY JUDGMENT ON OLIC'S CLAIM FOR BREACH OF CONTRACT

OLIC's first cause of action is for breach of contract.[22] OLIC alleges in its Complaint as follows:

> 17. OLIC has fully and completely complied with all obligations imposed on it under the Agreements.

> 18. NetCor was required by the Agreements and by the Articles of Incorporation of NetCor's failure to pay dividends on the stock issued to OLIC; and to redeem the 20,000 shares of Class A preferred stock issued to OLIC on or before September 30, 2003.

> 19. Although dividends are due and payable and demand has been timely and properly made by OLIC on NetCor for payment, NetCor has failed to pay the dividends due to OLIC.

> 20. In addition, although demand has been made on NetCor to redeem the 20,000 shares of Class A preferred stock issued to OLIC as contemplated in the Agreements and as provided in the Articles of Incorporation of NetCor, NetCor has wholly failed to redeem the 20,000 shares of Class A preferred stock held by OLIC.

---

[22] OLIC's Complaint at Section IV, ¶¶ 17-21 at pp. 5, 6.

8

21. As a result of its action, NetCor is in breach of its obligations under the Agreements and as set out in the Articles of Incorporation of NetCor and OLIC has been damaged thereby in the amount of $2,000,000.00, representing the redemption price of the 20,000 shares of Class A preferred stock of NetCor, plus an additional amount of $120,000.00, being the amount of the unpaid dividends owed to OLIC as of the date of filing of this Complaint.

As discussed, above, under the provisions of NetCor's Articles of Incorporation, as amended, OLIC was entitled to dividend payments only "as declared by the Board of Directors out of funds of the corporation *legally available* therefor."[23] The Articles of Incorporation, as amended, also set forth the schedule by which the corporation must redeem the shares of Preferred Stock. As a matter of law, however, OLIC may not recover for breach of contract of the dividend and redemption provisions of NetCor's Articles of Incorporation because Guam law prohibits payment of dividends under the circumstances. Additionally, even if Guam law was silent on the issue, OLIC has itself failed to perform under the contract with NetCor; therefore, it may not recover against NetCor for breach of the same contract under which it has not performed.

A. **Guam Law Prohibits Dividend Payments to OLIC From Other Than *Surplus Profits*.**

Guam law prohibits the payment of any stock dividend except from the "surplus profits" of a corporation's business. In this regard, 18 G.C.A. §4105 provides, in relevant part, as follows:

> No corporation shall make or declare any stock or bond

---

[23] NetCor Inc. Amendment No. 3 to Articles of Incorporation at Section A (1), attached as Exhibit H to OLIC's Complaint (emphasis added).

> dividend or any dividend whatever **except from the surplus profits arising from its business**, or divide or distribute its capital stock or property other than actual profits among its members or stockholders until after the payment of its debts and the termination of its existence by limitation or lawful dissolution.[24]

Consequently, any dividends declared and paid by NetCor must have been from the surplus (amount of assets over liabilities) of the business. If the business was not profitable, no dividends can be declared.

Guam law is adopted from the old California Corporations Code Section 356, which dates as far back as the mid-1800s, and which has since been significantly amended. Indeed, the former California Code no longer exists in its present form and it is difficult to locate any cases which specifically address this old statute. Additionally, there are no Guam cases on record which address this issue. However, the case of <u>Southern California Home Builders v. R.O. Young</u>, 45 Cal. App. 679, 188 P. 586 (Ca. Ct. App. 1st D. 1920), provides some guidance.

In the case of <u>Southern California Home Builders</u>, the California appellate court was asked to consider a provision of the Civil Code much like Guam's Section 4105 and which provided as follows:

> The directors of corporations **must not make dividends except from surplus profits arising from the business thereof**, . . . nor must they divide, withdraw or pay to the stockholders or any of them, any part of the capital stock.[25]

Although the appellate court was passing upon the question of the directors' statutory

---

[24] 18 G.C.A. § 4105 (Emphasis added).

[25] <u>Southern California Home Builders</u>, 45 Cal. App. at 682 (quoting section 309 of the California Civil Code).

10

liability for declaring and paying out dividends when there were no surplus profits, the court noted that the purpose of such a restriction is to protect the value of the corporation and noted that "the impairment of capital resulting from unlawful payment of dividends . . . renders the corporation less able to conduct its business and to meet its obligations."[26] "Surplus profits," the court recognized, is defined as follows:

> 'the excess of receipts over expenditures; that is, net earnings' [citation omitted]; 'the receipts of a business, deducting current expenses; it is equivalent to net receipts.' [Citation omitted]. 'Net earnings are properly the gross receipts, less the expense of operating the road or other business of the corporation . . . When all liabilities are paid either out of the gross receipts or net earnings, the remainder is the profit of the shareholders.' [Citation omitted]. 'Under these definitions it is not easy to comprehend how profits or surplus profits can consist of earnings never yet received. The term imports an excess of receipts over expenditures, and without receipts there cannot properly be said to be profits.[27]

As detailed in the Declaration of Willie Replan, Acting Chief Financial Officer of NetCor, Inc., although NetCor declared dividends on Preferred Shares (of which OLIC is the only such shareholder), NetCor did not have any *surplus profits* from which could be legally paid those dividends.[28] In fact, as set forth in the Declaration of Willie Replan, in order for NetCor to make the "dividend" payments to OLIC, it obtained the funds to do so from its subsidiary NetCare Life and Health Insurance Company ("NLHIC"), a Guam domestic life insurance company.[29] When the Insurance Commissioner

---

[26] Id. at p. 692-693 (citing Appleton v. American Malting Co., 65 N.J. Eq. 375).

[27] Id. at p. 693-694.

[28] Replan Declaration at ¶3.

[29] Id. at ¶5.

11

of Guam discovered this transfer during an audit of NLHIC, he declared that it was improper and stated that NLHIC must cease making such payments on NetCor's behalf.[30]

Based on the foregoing, even viewing all of the facts as alleged in OLIC's Complaint in a light most favorable to OLIC, NetCor is prohibited *as a matter of law* from declaring any dividends on the Class A Preferred Shares in OLIC's possession.

## B. OLIC Has Failed to Perform under the Contract with NetCor.

It is a general rule of contract law that one who seeks payment under a contract must show that he has performed that contract.[31] OLIC asserts in its Complaint that "NetCor is in breach of its obligations under the Agreements and as set out in the Articles of Incorporation of NetCor," and, therefore, OLIC is entitled to recover $2 million. In order to prevail, OLIC must establish a *prima facie* case that it has performed its own obligations under the Contract. This is cannot do.

The general rule cited, above, is codified in Title 18 Guam Code Annotated Section 80406 and provides that a party demanding performance must first fulfill all conditions precedent or concurrent before requiring the other to perform an obligation. In this regard, Section 80406 provides, in relevant part, as follows:

> **§ 80406. When performance is essential.** Before any party to an obligation can require another party to perform any act under it, ***he must fulfill all conditions precedent thereto imposed upon himself***, and must be able and offer to fulfill all conditions concurrent so imposed upon

---

[30] Id.

[31] Hogue-Kellogg Co. v. Petit, 192 P. 113, 115 (Cal.Ct.App. 1920).

12

him on the like fulfillment by the other party, except as provided in the next section.[32]

Section 80406 was adopted from, and is identical to, California Civil Code Section 1439. Cases interpreting the California counterpart of Section 80406 hold that the party who first breaches a contract cannot enforce the contract against the other party who later breaches the contract, and the other party's obligation to perform under the contract is discharged. Indeed, California Courts have consistently held that one in material breach of a contract may not sue for its enforcement.

In the California case of <u>Karales v. Los Angeles Creamery</u>, the plaintiff (Karales) entered into a contract wherein he was obliged to deliver a certain amount of milk to the defendant for a period of three months.[33] Two months into the contract, Karales sold his cows, got out of the dairy business, and stopped delivering milk. Thereafter, Karales sued the defendant for two months worth of back payments on milk that had previously been delivered. The trial court found in favor of Karales and the defendant appealed.

The appellate court reversed the judgment of the trial court and held that because Karales was the party who first breached the contract, he could not maintain an action against the defendant:

> One who himself breaches a contract, without excuse, cannot recover in an action upon the contract for a breach of its terms by the other party. . . The fact that Karales sold his cows and went out of the diary business

---

[32] 18 G.C.A. § 80406 (emphasis added).

[33] <u>Karales v. Los Angeles Creamery</u>, 36 Cal.App. 171; 171 P. 821 (Cal.Ct.App. 1918).

13

was plainly no excuse or justification for his breach of the contract.[34]

Applying well-settled law to the instant case, in order for OLIC to prevail in its claim for breach of contract against NetCor, it must establish that it has satisfied the conditions precedent under the Contract with NetCor. As set forth in the Declaration of William R. Replan, OLIC did not transfer only "in force" to NLHIC. Instead, OLIC transferred over 1,500 *Not-in-Force* policies, including the following: policies that had lapsed prior to the Date of Closing for non-payment; policies artificially kept "in force" by OLIC; policies which had automatically lapsed prior to December 31, 1998; policies which had expired prior to December 31, 1998; and policies which were not in force because they were being processed as death claims as of December 31, 1998.[35] Because of this failure to satisfy its own obligations under the Contract, NetCare is entitled to summary judgment in its favor on OLIC's claim for breach of contract.

## III. OLIC IS NOT ENTITLED TO SPECIFIC PERFORMANCE

Specific performance is not available as a matter of right. It is well settled law that "[t]he

---

[34] Id. See also, Wood, Curtis & Co. v. Scurich, 5 Cal.App. 252, 90 P. 51 (Cal.Ct.App. 1907), 90 P. at 52 ("The rule that one who wrongfully refuses to perform the conditions of the contract on his part cannot recover a breach of the contract by the other party is akin to the rule in equity that one who asks equity must do equity."); Silver v. Bank of America, 47 Cal.App.2d 639, 118 P.2d 891, 894 (Cal.Ct.App. 1941) ("One who himself breaches a contract cannot recover for a subsequent breach by the other party."); Rathbun et al. v. Security Mfg. Co., 82 Cal.App. 793; 256 P.2d 296, 297 (Cal.Ct.App. 1927) ("It is elementary that one party cannot compel another to perform while he himself is in default under the contract."); Lewis Pub. Co. v. Henderson, 103 Cal.App. 425; 284 P. 713, 715 (Cal. 1930) ("[H]aving failed to prove that it performed its part of the contract, plaintiff was not entitled to enforce its terms against the other party thereto.").

[35] Replan Declaration at ¶¶ 7-13, at p. 3, Exhibits G through L. Admittedly, there is a factual dispute over when NetCor discovered the full extent of OLIC's breach. However, it is undisputed that OLIC transferred policies that were *not* in force, a *prima facie* breach of the relevant contracts.

14

party seeking specific performance of a contract must show that he has performed his part of the agreement; or that he was ready, willing, and able to perform and was prevented from performing by the act of the other party."[36] As discussed in greater detail, above, OLIC did not satisfy its own obligations under the contract with NetCor. For the reasons discussed in the preceding section, as well as the following cases, NetCor is entitled to summary judgment against OLIC.

In the case of Rothner v. Mermelstein, 219 Ill. App. 3d, 579 N.E.2d 1022 (Ill. Ct. App. 1991), the Illinois appellate court granted summary judgment in favor of defendants and rejected plaintiff's claim for specific performance under a Stock Purchase Agreement after finding that the plaintiff had not performed his obligations under the parties' agreement.[37] In so ruling, the court reasoned that "where a contract requires the buyer to pay money and the seller to deliver the object of the sale at a certain time, those covenants are mutual and dependent. Under those circumstances, neither party can compel the other to perform without first tendering the money or the item."[38]

A.      **OLIC is in Material Breach of the Contract.**

The parties' Subscription Agreement of December 31, 1998, states that the consideration for the issuance of the 20,000 shares of preferred Stock in NetCor is:

> [T]he contemporaneous transfer and assignment by OLIC of certain portions of OLIC's portfolio of insurance to NetCare Life and Health Insurance Company ("NLHIC") . . . pursuant to that

---

[36] Rothner v. Mermelstein, 219 Ill. App. 3d 502, 579 N.E.2d 1022 (Ill. Ct. App. 1991).

[37] Rothner v. Mermelstein, 219 Ill. App. 3d 502, 508, 579 N.E.2d 1022, 1027 (Ill. Ct. App. 1991).

[38] Id.

15

certain Agreement for Transfer and Assumption of Insurance Portfolio (the "[TAP] Agreement") dated as of the date hereof between OLIC and NLHIC on the Closing Date (the "Closing") all as specified in the Agreement."[39]

The Subscription Agreement also provides that "OLIC shall not . . . be entitled to dividends or other benefits of the Stock hereunder, unless and until . . . [a]ll conditions of Closing have been concurrently satisfied."[40]

The TAIP Agreement, which comprises a part of the entire agreement for the transfer of OLIC's *in force* policies, is referenced and incorporated into the Contract for Sale and Transfer of Insurance Portfolio ("Contract for Sale") dated December 31, 1998.[41] The Contract for Sale specifically excludes from the transfer "any policies which terminated or lapsed prior to [December 31, 1998].

The TAIP Agreement provides, as a condition of closing, that *only* the Assumed Policies would be assumed by NLHIC.[42] Additionally, in the TAIP Agreement, OLIC made warranties to NLHIC "as a ***material*** inducement to enter into this Agreement" including the following:

> (2) That to the knowledge of OLIC, none of the policyholders, insureds, or beneficiaries of the Assumed Policies have any claim or cause of action against OLIC as a result of the application for or issuance of such Assumed Policies or for any other reason except such

---

[39] Subscription Agreement at p. 1, attached to Plaintiff's Complaint as Exhibit F. (Emphasis added.)

[40] Id. at ¶5(b), p. 2.

[41] Contract for Sale and Transfer of Insurance Portfolio at *Recitals*, ¶ 4, attached to Plaintiff's Complaint as Exhibit A.

[42] TAIP Agreement at Section I(A)(1).

16

rights as may be specifically expressed in the written policy contract;

(3)     That no person, firm or corporation has any claim or lien on the Assumed Policies or their premium, except OLIC, and except for:

(a)     policy Loans;
(b)     assignments of benefits on cash values or policy proceeds by policy owners;
(c)     reinsurance contracts certified copies of each of which are attached hereto as exhibits; and

(4)     That OLIC is not aware of any fact or condition which materially impairs or diminishes the value of the Assumed Policies or Assets transferred hereby.[43]

In exchange for the 20,000 shares of Class A Preferred Stock in NetCor, OLIC was to have effectuated the proper transfer to NLHIC of only the Assumed Policies without any outstanding death claims, as well as the reserves related thereto. As set forth in the Declaration of Willie Replan, OLIC transferred policies that had actually terminated, or were otherwise "Not In Force (NIF)" at the time of the transfer.[44] This transfer of Not In Force policies clearly violated the terms of the contract and was, indeed, a *material* breach that cannot be cured.

Under the circumstances, it is clear the OLIC did not perform its obligations under the Subscription Agreement, which incorporated the performance of OLIC's obligations to NLHIC. As such, OLIC is not entitled to specific performance for payment of dividends and redemption of the Preferred

---

[43] TAIP Agreement at Section I(D)(2)-(4)(Emphasis added).

[44] Replan Declaration at ¶ 7-13.

Shares. For these same reasons, OLIC is not entitled to attorneys' fees or costs. Consequently, NetCor respectfully submits that it is entitled to summary judgment on each of the claims in OLIC's complaint as a matter of law.

## CONCLUSION

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). NetCor is entitled to summary judgment as a matter of law because even if every disputed factual issue is viewed in Plaintiff's favor, as a matter of law, NetCor is prohibited by law from paying dividends and redeeming the Preferred Shares.

Additionally, OLIC cannot establish that it has performed its obligations under the Subscription Agreement and related agreements. As the undisputed facts establish, OLIC simply transferred worthless policies which were not *in force*. By its own admission, OLIC considered itself "lucky" to have been rid of the policies and believed that they "would have gotten nothing at all for it." As evidenced by the OLIC's reduction of the value of NetCor stock to $-0-,[45] it would seem that OLIC has

---

[45] Replan Declaration at ¶ 16.

18

received what it bargained for. For these reasons, NetCor respectfully requests this Court grant summary judgment in its favor on OLIC's claims against NetCor.

Respectfully submitted this 2nd day of August, 2005.

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys for Defendant/Counter-claim Plaintiff
NetCor Inc. Holding Company

By _____
MARIA T. CENZON-DUENAS

P05730.MTCD.wpd

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2005, a copy of the foregoing Defendant/Counterclaim-Defendant NetCor Inc. Holding Company's Motion For Summary Judgment, was served, via hand delivery, on:

David W. Dooley, Esq.
DOOLEY ROBERTS & FOWLER, LLP
865 S. Marine Corps Drive, Ste. 201
Orlean Pacific Plaza
Tamuning, Guam 96913

Respectfully submitted this 2nd day of August, 2005.

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys for Defendant/Counterclaim Plaintiff
NetCor Inc. Holding Company

By _____
MARIA T. CENZON-DUENAS